BURKEY v BURKEY (ON REHEARING)

Docket No. 116602. Submitted March 15, 1990, at Grand Rapids. Decided May 6, 1991, at 10:25 A.M.

Larry M. Burkey brought an action for divorce in the Kent Circuit Court against Donnah L. Burkey. The court, Robert A. Benson, J., granted the divorce, awarded alimony to the defendant, and divided the marital assets, except for the defendant's holdings in an employee stock ownership plan for retirement savings. The court awarded these holdings to the defendant without determining value. The plaintiff appealed, challenging the court's refusal to value the defendant's interest in her stock ownership plan, the consideration of his fault in the breakdown of the marriage, and the inequity of the award of alimony. The Court of Appeals, MARILYN KELLY, P.J., and WEAVER, J. (SAWYER, J., dissenting in part), found that the trial court erred in failing to value the defendant's stock ownership plan and include it as a marital asset subject to division, requiring a remand to the circuit court for a determination of the plan's value and distribution as a marital asset. The Court also held that the trial court, in dividing the other marital assets, did not err in considering the plaintiff's fault in the breakdown of the marriage, and that there was no abuse of discretion in the trial court's ratio of property division and award of alimony. Thereafter, on February 22, 1991, the Court of Appeals on its own motion ordered rehearing of the case.

On rehearing, the Court of Appeals held:

1. An employee stock ownership plan may be categorized as a defined-contribution plan, in which the employee or employer, or both, contribute specified amounts. The present value of a plan can be readily ascertained at any time by determining the value of the stock or other investments made by the plan and the number of shares in the employee's account and multiplying that figure by the value of those shares. Where the employee is not fully vested, present value also must be multiplied

REFERENCES

Am Jur 2d, Divorce and Separation §§ 905 et seq.

Divorce and separation: treatment of stock options for purposes of dividing marital property. 46 ALR4th 640.

by the percentage of vesting achieved. On remand, the trial court must assign a value to the defendant's plan. In addition, if a percentage of the unvested plan was payable to the defendant because of service credit accrued during the marriage, and if it would be just and equitable to do so, the trial court may add it pursuant to MCL 552.18; MSA 25.98. Furthermore, if it so chooses, the court may reconsider the division of assets and increase the defendant's share.

2. The trial court, in dividing the other marital assets, did not clearly err with respect to its findings of fact regarding the plaintiff's fault in the breakdown of the marriage. Fault is a legitimate consideration in arriving at a property division in a divorce matter.

3. The trial court's ratio of property division and award of alimony, when reviewed de novo, do not indicate that a different result would have been reached by the Court of Appeals had it been in the trial court's place. Accordingly, the property division and alimony award must be affirmed.

Affirmed in part, reversed in part, and remanded.

SAWYER, J., concurring in part and dissenting in part, stated that on remand the trial court should not consider the unvested portion of the plan in assigning a value to it because to do so would impermissibly take into account the parties' postdivorce decisions or actions and would not be just and equitable. The trial court also should not increase the defendant's share of the marital assets upon valuation and division of the stock ownership plan. In addition, divorce cases should no longer be subject to de novo review. Instead, conclusions of law are to be reviewed to determine correctness, findings of fact are to be reviewed for clear error, and exercises of discretionary authority are to be reviewed for abuses of discretion. Accordingly, the trial court's determination that fault may be considered was a conclusion of law and, upon review, correct. The trial court did not clearly err in finding that the plaintiff was at fault in the breakdown of the marriage. Finally, the trial court did not abuse its discretion with respect to the ratio of property division. On remand, while the stock ownership plan should be valued and distributed, the trial court also should reconsider the division of assets to achieve a more even division.

1. DIVORCE — MARITAL ESTATE — EMPLOYEE STOCK OWNERSHIP PLANS.

Marital property subject to division upon divorce may include a spouse's interest in an employee stock ownership plan held for retirement savings; the present value of the holdings should be calculated with regard to a date before the divorce is final by

multiplying the number of shares in the account by the value of each share; if the account holder is not fully vested, the present value additionally should be multiplied by the percentage of vesting achieved.

2. DIVORCE — PROPERTY DIVISION — ALIMONY — APPEAL.

A trial court's division of marital property and award of alimony in a divorce action are subject to a two-part review by the Court of Appeals; first, the trial court's findings of fact are reviewed under the clearly erroneous standard, and, second, given the findings of fact, the court's division of the marital property and award of alimony is reviewed de novo; the Court of Appeals will not reverse the trial court's dispositional ruling unless convinced it would have reached a different result had it been in the trial court's place.

*Michael L. Idema,* for the plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather*), and *George T. Krupp,* for the defendant.

ON REHEARING

Before: MARILYN KELLY, P.J., and SAWYER and WEAVER, JJ.

MARILYN KELLY, P.J. Plaintiff appeals from a judgment of divorce entered March 20, 1989. We affirm in part and reverse in part.

The parties were married on September 24, 1966, and separated after more than twenty years, on December 28, 1986. Plaintiff filed a complaint for divorce on July 20, 1987. Two children were born of the marriage both of whom are now adults.

Following trial, the court made a determination of the value of the marital estate and divided it as follows: Defendant received the marital home with an equity of $28,900, her IRA account with a value of $3,000, and the household goods which were valued at $1,500. Plaintiff received a $10,000 lien

on the house, a money market account worth $5,297, his IRA account of $2,500, and tax refunds in the amount of $1,503. Thus, the value of the property awarded to Mrs. Burkey was $33,400, while the property awarded plaintiff was valued at $19,300. The parties do not dispute on appeal the valuation of the above items.

What plaintiff does challenge is the trial court's refusal to value defendant's interest in her employee stock ownership plan (ESOP). The plan was awarded to her with no dollar amount ascribed to it. The trial court explained it was unable to put a present value on the ESOP, because none was provided by the parties. We conclude that the trial court erred in failing to assign a value to the ESOP and that it could have done so with the evidence before it.

An ESOP serves a purpose similar to that of an ordinary pension plan, the providing of financial security in retirement. However, an ESOP is not the functional equivalent of a pension plan and, therefore, must be treated differently. The primary distinction between an ESOP and an ordinary pension plan is the nature of the benefit to be paid and the method of calculating that benefit.

An ordinary pension plan may be referred to as a "defined benefit plan." It guarantees upon retirement payment of a certain monthly benefit which generally is independent of the investment performance of the pension fund itself. The benefit is dependent upon factors such as the employee's length of service with the company and salary preceding retirement.

An ESOP, on the other hand, is better categorized as a "defined contribution plan" whereby the employee or employer, or both, put specified amounts into the plan. The plan's trustee credits the contributions to the employee's account. The benefit paid

out upon retirement is directly related to the value of the account. That value in turn is directly related to the amount of contributions paid into the plan as well as to the performance of the investments made by the plan.

Under an ordinary pension plan, the retirant's benefits normally run until death. Under an ESOP, the employee's account is paid off in a specified number of installments over a specified period of time.

When determining the present value of a pension plan, a number of contingencies must be considered. Among them are the amount of monthly benefit to which the employee will be entitled, the length of time before payment will begin, and the employee's probable life expectancy.

An ESOP is not subject to any such variable. The present value of an ESOP plan can be readily determined at any given time by looking at the value of the stock or other investments made by the plan. All that must be done to determine present value is to determine the number of shares in the employee's account and multiply that figure by the value of those shares. Defendant in the case at bar was annually notified what number of shares were owned by her, their value and, therefore, the value of the ESOP account itself.

The trial court correctly determined that the valuation reached by the trial court could not be dependent upon the happening of future events after the divorce. *Kilbride v Kilbride,* 172 Mich App 421, 435-436; 432 NW2d 324 (1988). Accordingly, the trial court ignored any changes which might occur to the ESOP after divorce, such as additional contributions and fluctuation in the price of the stock.

The actual date to be used for valuation of an asset is within the discretion of the trial court.

*Curylo v Curylo,* 104 Mich App 340, 351; 304 NW2d 575 (1981). In this case, the court used December 31, 1987, since neither party presented information to enable valuation of the stock in the ESOP as of a different date.

In addition, the trial court properly ignored the effect of inflation, a factor to be considered in valuing a pension plan. The fluctuating value of the ESOP investments themselves compensates for inflation. This is not to say that the value of the investments held in the ESOP account will necessarily increase at the same rate as inflation. Rather, the value of the account may well perform better or worse than the rate of inflation, depending upon the performance of the particular company whose stock is held. This difference, however, is of no relevance. Simply, investments which fluctuate with market forces need not be adjusted for inflation as must be payments of a sum certain in the future.

"Present value" is essentially the amount of money a person must receive today in order to provide the same benefit which he is scheduled to receive later. Thus, in the case of a pension plan, it is the amount a person would have to invest today so as to obtain what the plan would pay in the future. See *Kilbride, supra,* 440, n 6.

By contrast, with an ESOP, the amount of money which would have to be invested today to provide for the same future benefit is the current value of the ESOP. For example, if one had an ESOP account worth $20,000, a person could provide the same benefit by purchasing $20,000 worth of the same stock held in the ESOP account. Thus, the present value of an ESOP account is the balance itself, adjusted for any partial vesting.

For the above reasons, we conclude that the trial court erred in failing to value defendant's

ESOP account and failing to include it as a marital asset subject to division. On remand, the trial court shall determine the present value of the ESOP by multiplying the account balance on the appropriate date by the percentage vested. In addition, if a percentage of the unvested ESOP was payable to defendant on account of service credit accrued during the marriage, the court may add it, if just and equitable. MCL 552.18; MSA 25.98. After determining its value, the trial court shall make an appropriate distribution of the ESOP asset.

Plaintiff also argues that the trial court erred in considering his fault in the breakdown of the marriage. The fault consideration resulted in sixty-three percent of the marital assets being awarded to defendant and thirty-seven percent to plaintiff. Fault is a legitimate consideration in arriving at a property division in a divorce matter. *Pelton v Pelton,* 167 Mich App 22, 26; 421 NW2d 560 (1988). Furthermore, we review the trial court's findings of fact under the clearly erroneous standard. *Beason v Beason,* 435 Mich 791; 460 NW2d 207 (1990). The finding of fault in this case was not clear error.

The trial court's decision to award defendant sixty-three percent of the marital estate was a dispositional ruling. We review it de novo but will not reverse it unless convinced we would have reached a different result in the trial court's place. *Paul v Paul,* 362 Mich 43, 46-47; 106 NW2d 384 (1960). Accordingly, we decline to set aside the ratio of property division fashioned by the trial court.

We employed a two-part review in reaching this conclusion. First, we determined that the trial court's findings of fact were not clearly erroneous under the standard put forth in *Beason.* Then, given these findings, we reviewed the dispositional

ruling, which was the decision to award sixty-three percent of the estate to defendant, under the de novo standard. See Powell & McAlpine, *Standards of Review in Michigan,* 70 Mich B J 28, 30 (1991).

It is noteworthy that, in affirming the trial court, we did not exercise an abuse of discretion standard of review. See *Spaulding v Spaulding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959). The trial court has great discretion in distributing the property of divorcing parties. However, it does not follow that this Court reviews a lower court dispositional ruling in a divorce case for an abuse of discretion. Powell & McAlpine, *supra.*

Also noteworthy is the fact that the Supreme Court in the *Beason* decision addressed itself to the proper standard for reviewing a trial court's findings of fact. It was not asked to review a dispositional ruling such as an award of alimony. *Beason, supra,* 798. Accordingly, the Court made no statement in *Beason* affecting the existing standard of review for dispositional rulings. We see no reason to stretch the *Beason* holding beyond its stated subject matter, nor do we believe the Court intended us to do so.

We are mindful that the trial court divided the assets with the view that the ESOP was not to be valued and awarded it solely to defendant. Therefore, in light of our resolution of the ESOP valuation issue, if it so chooses on remand, the trial court may reconsider the division of assets and increase defendant's share.

Finally, plaintiff argues that the award of alimony in the amount of $50 per week was inequitable. The standard of review of an alimony award by our Court is the same as that for a property division. *Cloyd v Cloyd,* 165 Mich App 755, 759; 419 NW2d 455 (1988). In the case at bar, we find

no error. Accordingly, we affirm the trial court's award of alimony.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction. No costs are awarded, as neither party has prevailed in full.

Weaver, J., concurred.

Sawyer, J. *(concurring in part and dissenting in part).* While I agree with the majority's result and much of its reasoning with respect to the valuation of the ESOP and the alimony award, there are some specific points in the remainder of the opinion with which I disagree.

As for the valuation of the ESOP, the majority correctly recognizes that it must be valued without regard to the happening of events occurring after the divorce. See *Kilbride v Kilbride,* 172 Mich App 421, 436; 432 NW2d 324 (1988). Moreover, I agree with the majority's discussion of the differences involved in determining the present value of defined-benefit plans versus defined-contribution plans. Accordingly, the majority correctly concludes that the trial court should have valued the ESOP on the basis of the evidence before it, namely, that it had a total value of $19,944.14 on December 31, 1987, and that defendant was sixty percent vested on that date, making the value of the ESOP $11,966.48.

I do have some concern with the majority's reliance on MCL 552.18(2); MSA 25.98(2) in concluding that the trial court may also award that part of the unvested portion of the ESOP which is attributable to service credit accrued during the marriage. That statute authorizes, but does not compel, the awarding of rights to "unvested pension, annuity, or retirement benefits" attributable to service credit accrued during the marriage

"where just and equitable." Assuming, without deciding, that this statute applies to ESOPs in general, I am not completely convinced it should be applied to the case at bar.

In *Kilbride, supra* at 441, we cautioned that distribution of pension benefits should not be based on actions or decisions of the parties following the divorce. In the case at bar, any further vesting would be contingent upon defendant's postdivorce choice to remain with her employer. Thus, *Kilbride* would counsel against awarding any portion of the unvested ESOP. This is not to say that the statute is meaningless. Rather, it is designed for those cases in which equity demands some consideration of future events. For example, equity would demand that the pension be considered where the pension would vest a few days after the divorce where the entire period of employment occurred during the marriage. On the other hand, equity would present no such demand where a significant period of time remained until vesting, or where, as here, there was partial vesting, the percentage of which increased with time. Accordingly, I would not be inclined to consider the unvested portion of the ESOP in dividing the marital estate in this case, and would caution the trial court to exercise its discretion with great care in this regard.

Furthermore, while I agree with the majority's determination to allow the trial court to reconsider the ratio of property division, I strenuously disagree with the majority's comment that the trial court might wish to increase defendant's share of the marital estate. Furthermore, I disagree in part with the standard of review employed by the majority.

Plaintiff argues that the trial court erred in considering fault in determining that defendant

should receive sixty-three percent of the marital estate. Like the majority, I disagree with plaintiff's argument. Fault is a legitimate consideration in arriving at a property division in a divorce matter. See *Pelton v Pelton,* 167 Mich App 22, 26; 421 NW2d 560 (1988).[1]

The majority purports to review the trial court's decision with respect to the division of assets under the de novo standard of review. While this certainly has been the standard employed in the past, I believe that the correct reading of the Supreme Court's recent decision in *Beason v Beason,* 435 Mich 791; 460 NW2d 207 (1990), is that the de novo standard of review has been completely abandoned. Admittedly, the Court in *Beason* determined only that the de novo standard of review is inapplicable to review of a trial court's findings of fact. Rather, those findings are to be reviewed under the "clearly erroneous" standard. *Id.* at 805.

However, unlike the majority, I do not believe that the Court's decision in *Beason* to abandon de novo review is limited to review of the trial court's findings of fact. Rather, I view the Court's determination in *Beason* to be a complete abandonment of de novo review in divorce cases. Indeed, *Beason* probably signals a complete abandonment of de novo review in all actions in equity.

Our constitution mandates the abolishment, to the extent practicable, of the distinctions between law and equity. Const 1963, art 6, § 5; *Beason, supra* at 797. In *Beason, supra* at 798, the Court specifically noted that the division of property requires the exercise of discretion. Furthermore,

---

[1] Plaintiff raises a number of interesting points addressing the issue whether fault should be considered. I am not, however, prepared to disagree with the large body of case law which approves of considering fault in determining an appropriate property division.

the majority's statement that a dispositional ruling is reviewed de novo and that we will not reverse "unless convinced we would have reached a different result," *ante* at 78, contradicts *Beason*. In *Beason, supra* at 805, the Court specifically condemned the "unless convinced that we would have reached a different result" formulation. I am satisfied that *Beason* signals that the courts are at last to acknowledge the constitutional mandate to merge law and equity and that the de novo standard of review has, at long last, been relegated to the dustbin of history.

In lieu of de novo review, this Court must apply one of three standards, depending on the exact type of ruling being reviewed. If the trial court's conclusion or application of law is at issue, it is reviewed merely to determine if it is correct or incorrect. See *Beason, supra* at 804-805. If findings of fact are being reviewed, then the clearly erroneous standard applies. *Id.* Finally, where the trial court's discretionary exercise of authority is at issue, the court's decision is reviewed for an abuse of discretion. See *Spalding v Spalding*, 355 Mich 382, 384; 94 NW2d 810 (1959).

Accordingly, the trial court's determination that fault may be considered was a conclusion of law which we review merely to determine if it is correct. As indicated above, I believe it was. Next, the trial court's finding of fact that plaintiff was at fault is reviewed to determine if it was clearly erroneous. I agree with the majority that it was not. Finally, the trial court's decision to award sixty-three percent of the marital estate to defendant is an exercise of discretion, which must be reviewed merely for an abuse of that discretion, not, as the majority suggests, subjected to de novo review. With respect to whether the trial court abused its discretion in this regard, I am admit-

tedly troubled by the generous award to defendant and would not have awarded more than sixty percent of the marital estate to defendant had I been the trial judge. However, I was not the trial judge, and I am not inclined to substitute my judgment for his. Accordingly, I cannot conclude that the good judge abused his discretion in this respect.

I do believe, however, that the trial judge should be afforded the opportunity to reconsider the issue of the property division in light of our resolution of the ESOP valuation issue. The trial court made its determination of the division of assets with the view that the ESOP was not to be valued and awarded it solely to defendant. Since we conclude that it should have been valued at $11,966.48 and included in the marital estate, the trial judge might exercise his discretion differently and perhaps *reduce* defendant's share of the marital estate. Accordingly, I take strong exception to the majority's observation that the trial court might wish to change the ratio of distribution of the assets to even more lopsidedly favor defendant. As indicated above, I am troubled with the generosity of the trial court toward defendant as it is. I certainly could not sanction any *increase* in defendant's share of the marital estate.

I, too, would remand for a valuation and distribution of the ESOP, but would also allow the trial court to reconsider the division of assets on remand to more *evenly* divide the assets.