# STATE OF MICHIGAN

# COURT OF APPEALS

FRANCES J. PERAINO,

       Plaintiff-Appellant,

v

VINCENT A. PERAINO,

       Defendant-Appellee.

UNPUBLISHED
February 28, 2017

No. 329746
Macomb Circuit Court
LC No. 2014-005832-DO

Before: JANSEN, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

In this divorce action, plaintiff, Frances J. Peraino, appeals as of right the trial court's judgment of divorce. Following a bench trial, the court concluded that a Merrill Lynch IRA held by defendant, Vincent A. Peraino, was separate property, refused to invade that separate property pursuant to statute, and awarded plaintiff $350 per month in spousal support. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant were married on May 20, 1995, when they were in their mid-50s and after both of their first marriages ended. At the time of marriage, defendant had a Merrill Lynch IRA valued at approximately $800,000. After three years of marriage, due to a change of employment status, defendant stopped contributing to that IRA. Throughout the marriage, plaintiff obtained various retirement accounts amounting to approximately $120,000. In 2012, plaintiff's son, David Connelly, died. Plaintiff was the beneficiary of David's life insurance policy, which resulted in her receiving approximately $38,000. After an altercation between defendant and plaintiff's other son, John Connelly, and plaintiff's concern regarding defendant's use of guns, plaintiff filed the instant suit for divorce. The case proceeded to a bench trial on the issues of property distribution and spousal support. At trial, plaintiff argued that defendant's Merrill Lynch IRA, then valued at around $400,000, should be classified as marital property and divided equally between the parties. Alternatively, plaintiff argued, if the IRA was separate property, the trial court should invade the asset for equitable distribution pursuant to MCL 552.23(1) or MCL 552.401. Plaintiff also argued that she was entitled to spousal support. Defendant urged the trial court to grant each party the property that was titled in his or her own name and to forego any spousal support award.

-1-

Following a bench trial, the court issued a written opinion and order, concluding that defendant's Merrill Lynch IRA was separate property and that plaintiff had not established the requirements of either statutory ground to invade the separate asset. The trial court also awarded plaintiff spousal support of $350 per month, an amount lower than what she requested.

## II. PROPERTY CLASSIFICATION

On appeal, plaintiff first challenges the trial court's decision to classify defendant's Merrill Lynch IRA as separate property. We review a trial court's factual findings in a divorce proceeding for clear error. *Richards v Richards*, 310 Mich App 683, 693; 874 NW2d 704 (2015). A factual finding is clearly erroneous if we are left with a definite and firm conviction that the trial court made a mistake. *Butler v Simmons-Butler*, 308 Mich App 195, 208; 863 NW2d 677 (2014). When reviewing a trial court's factual findings, we defer to the trial court on matters of witness credibility. *Richards*, 310 Mich App at 694. If we uphold a trial court's factual findings, we must then "decide whether the dispositive ruling was fair and equitable in light of those facts." *Sparks v Sparks*, 440 Mich 141, 152; 485 NW2d 893 (1992). We will affirm a trial court's dispositive ruling unless we are "left with the firm conviction that the division was inequitable." *Id.*

"In any divorce action, a trial court must divide marital property between the parties and, in doing so, it must first determine what property is marital and what property is separate." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). Property division in a divorce proceeding is governed by statute. *Korth v Korth*, 256 Mich App 286, 291; 662 NW2d 111 (2003), citing MCL 552.1 *et seq*. Generally, "assets earned by a spouse during the marriage are properly considered part of the marital estate and are subject to division, but the parties' separate assets may not be invaded." *Korth*, 256 Mich App at 291, citing MCL 552.19. However, "there are occasions when property earned or acquired during the marriage may be deemed separate property." *Cunningham*, 289 Mich App at 201. Further, "separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and 'treated by the parties as marital property.' " *Id.*, quoting *Pickering v Pickering*, 268 Mich App 1, 11; 706 NW2d 835 (2005). The fact that property is titled in one individual's name alone, or titled jointly, is not necessarily dispositive. *Cunningham*, 289 Mich App at 201-202.

Plaintiff first argues that the trial court improperly classified defendant's Merrill Lynch IRA as separate property because she provided evidence that defendant commingled marital assets with the IRA and the parties treated the IRA as marital property. We disagree.

The record demonstrates that defendant began contributing to his Merrill Lynch IRA in the mid-1970s. When he married plaintiff in 1995, the value of the IRA was approximately $800,000. Defendant continued to contribute to the IRA until his employer reclassified him as an independent contractor in 1998, which ended the employer contributions to the account. Defendant testified that he did not further contribute to the IRA after that reclassification.

Plaintiff testified that she received an $8,000 inheritance when her mother died, and she used half of that money to open a separate IRA in defendant's name. According to plaintiff, defendant eventually rolled that separate IRA over into his Merrill Lynch IRA. Plaintiff also

said she contributed to more than her share of marital bills and made double mortgage payments on their condominium in order to ensure that defendant did not have to remove funds from his Merrill Lynch IRA.

In its opinion, the trial court explained that it did not find credible plaintiff's testimony that she contributed $4,000 of inherited money to defendant's Merrill Lynch IRA or that she contributed more heavily to marital expenses and made regular extra mortgage payments so that defendant could maintain his IRA portfolio. Specifically, the trial court cited plaintiff's inability to provide any documentary evidence of her alleged activities and the fact that opening another IRA for defendant was illogical when she could have simply contributed the $4,000 directly into defendant's Merrill Lynch IRA. As such, the trial court concluded that the only credible evidence on the record showed that defendant's Merrill Lynch IRA predated his marriage to plaintiff and thus constituted separate property.

On appeal, plaintiff argues that the trial court clearly erred by refusing to credit her testimony. However, the trial court's factual findings in this regard were based solely on plaintiff's lack of credibility, and we defer to the trial court's credibility determinations. See *Richards*, 310 Mich App at 694. Plaintiff has not offered any evidence on appeal, other than her own testimony, to support her assertions that defendant's Merrill Lynch IRA was treated by the parties as a marital asset and commingled with marital property.[1] Accordingly, we are not convinced that the trial court's factual findings on this matter were clearly erroneous.

### III. INVASION OF SEPARATE PROPERTY

Alternatively, plaintiff argues that, even if defendant's Merrill Lynch IRA is separate property, the trial court erred by refusing to invade the asset pursuant to MCL 552.23(1) or MCL 552.401 because she both contributed to the IRA and exhibited need. Again, we disagree.

Although a party to a divorce proceeding generally takes his or her separate property from a marriage without that property being subject to invasion, "a spouse's separate estate can be opened for redistribution when one of two statutorily created exceptions is met." *Reeves v Reeves*, 226 Mich App 490, 494; 575 NW2d 1 (1997), citing MCL 552.23 and MCL 552.401. Under the first statutory exception, a trial court may invade a separate asset "if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property." MCL 552.401. "Invasion is allowed under MCL 552.401 when one party 'significantly assists in the acquisition or growth' of the other party's separate asset, in which case 'the court may consider the contribution as having a distinct value deserving of

---

[1] To the extent defendant agreed that he contributed to the IRA for the first few years after the parties' marriage, plaintiff offered no evidence before the trial court regarding the amount of those contributions. We further note that plaintiff attempts to support her argument on appeal by providing documentary evidence that was not produced before the trial court. Not only is this evidence not properly before this Court because our "review is limited to the record established by the trial court," *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002), but it also provides no meritorious proof of plaintiff's claims.

compensation.' " *Skelly v Skelly*, 286 Mich App 578, 582; 780 NW2d 368 (2009), quoting *Reeves*, 226 Mich App at 495. A court is also permitted to invade a party's separate property "if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party . . . ." MCL 552.23(1).

Plaintiff's argument that invasion of defendant's Merrill Lynch IRA was required pursuant to MCL 552.401 due to her financial contribution to the account relies solely on her trial testimony, which, as discussed earlier, the trial court discredited. Apart from plaintiff's testimony, there is no evidence demonstrating that plaintiff contributed in any manner to defendant's Merrill Lynch IRA. Given the lack of evidence, plaintiff cannot show that she assisted in the growth of the account in a sufficient manner to warrant invasion of the separate property under MCL 552.401.[2]

Plaintiff also argues that she demonstrated sufficient need to invade defendant's Merrill Lynch IRA pursuant to MCL 552.23(1). Plaintiff cites her testimony that she requires $2,500 per month to maintain her standard of living. However, the trial court refused to credit plaintiff's testimony regarding her financial need, relying on the lack of documentary evidence provided by plaintiff to support her proposed budget. Further, the record reveals that plaintiff never provided clear or specific testimony regarding her costs of living. The only issue on which plaintiff specifically testified was that she included the purchase of a small condominium in her proposed budget, which she said would cost approximately $500 per month. Plaintiff did not testify regarding how she accounted for the remaining $2,000 in her proposed budget. Rather, the only credible evidence on the record showed that plaintiff received $1,432 of monthly income from her own retirement accounts. The court also awarded plaintiff spousal support in the amount of $350 per month, which increased her monthly income to $1,782, and awarded plaintiff her retirement accounts, which amounted to approximately $120,000. Considering the lack of clear and specific testimony and documentary evidence supporting plaintiff's assertions that her needs exceeded her assets and monthly income, the trial court did not err by refusing to invade defendant's IRA pursuant to MCL 552.23(1) to provide for plaintiff's maintenance and support.

## IV. SPOUSAL SUPPORT

Next, plaintiff challenges the trial court's award of spousal support. We review for an abuse of discretion a trial court's decision to award spousal support. *Gates v Gates*, 256 Mich App 420, 432; 664 NW2d 231 (2003). "An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes." *Carlson v Carlson*, 293 Mich App 203, 205; 809 NW2d 612 (2011). We review for clear error a trial court's findings of fact as they relate to an award of spousal support. *Gates*, 256 Mich App at 432. If the trial court's factual findings are not clearly erroneous, we must affirm a support award unless we are firmly convinced that it was inequitable. *Id.* at 433.

---

[2] Even if the trial court had credited plaintiff's testimony, a $4,000 contribution toward an IRA that was valued at $800,000 at the outset of the marriage would not amount to "significantly assisting" in the growth of the asset so as to warrant the invasion of defendant's separate property. See *Skelly*, 286 Mich App at 582.

"The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008). This Court has provided a list of 14 factors that a trial court should consider when determining if spousal support is proper in a given case, which are as follows:

> (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Woodington v Shokoohi*, 288 Mich App 352, 356; 792 NW2d 63 (2010).]

On appeal, plaintiff argues that the trial court improperly reduced her spousal support award on the basis of a clearly erroneous finding of fact regarding plaintiff's withdrawal of $26,500 from a joint savings account. We agree.

At trial, plaintiff testified that her son, David, died in 2012. Plaintiff explained that she was the beneficiary of David's life insurance policy, and when she initially received the life insurance payout of approximately $38,000, she deposited the money in a Comerica Bank savings account that she shared with defendant.[3] Plaintiff then used some of the money to pay David's funeral and probate expenses. Plaintiff testified that, after a few months, she transferred the remaining proceeds of the life insurance policy from the joint account into an account at Motor City Credit Union (MCCU) to secure a higher interest rate. According to plaintiff, she used the remaining funds to help pay her grandchildren's college tuition and to cover her legal fees in the instant case.

A statement from the parties' joint account, which was admitted at trial, showed that a withdrawal of $26,500 was made between October 1, 2013, and December 31, 2013. Defendant did not provide any testimony regarding this withdrawal. Statements from plaintiff's MCCU account, which were also introduced at trial, showed that as of January 31, 2014, plaintiff had

---

[3] Property that is acquired by one spouse through inheritance or some other economic addition independent of the marriage generally constitutes separate property. See *Lee v Lee*, 191 Mich App 73, 78-79; 477 NW2d 429 (1991). Plaintiff was named as the sole beneficiary of the life insurance policy of her son from a prior marriage, the proceeds of which constituted plaintiff's separate property. "[S]eparate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property." *Cunningham*, 289 Mich App at 201 (quotation marks and citation omitted). Under the circumstances presented in this case, we are satisfied that plaintiff's brief deposit of the life insurance proceeds into a joint account was not enough to transform their character from separate into marital property.

approximately $25,300 in her credit union account. According to the statements, plaintiff made several withdrawals during the pendency of this case and made several payments to Wayne State University, which is consistent with plaintiff's testimony that she helped pay college tuition for her grandchildren and used funds from the account to cover her legal fees.

Despite plaintiff's testimony and the corroborating documentary evidence, the trial court found that plaintiff did not account for the removal of the $26,500 from the joint account, concluding as follows:

> Plaintiff acknowledges that she withdrew most of the funds from the joint Comerica savings account approximately one year prior to the time that she filed for divorce. These funds were never accounted for and there appears to be no evidence that they were spent in support of the marital estate. Plaintiff appears to have secreted these funds without defendant's knowledge. The Court finds this to be a compelling factor in reducing the award of spousal support to plaintiff.

It is unclear from the record how the trial court reached its decision that plaintiff failed to account for the money that was removed from the joint account when she explicitly described how she initially deposited the proceeds from David's life insurance policy into the Comerica Bank joint savings account, then, after paying David's funeral and probate expenses, transferred the remaining funds to her credit union account and used them to pay for her grandchildren's tuition and her legal fees. The trial court made no reference in its opinion to plaintiff's testimony on this matter. Specifically, the trial court never stated that it found plaintiff's testimony on this point to lack credibility and never referenced any evidence or testimony from defendant that would contradict plaintiff's testimony. Although defendant testified that he believed plaintiff spent marital funds on her children without discussing it with him, he never suggested that the funds spent by plaintiff came from the $26,500 withdrawal from their joint account.

Given the lack of evidence supporting the trial court's finding that plaintiff secretly disposed of the $26,500 from the parties' joint account, as well as her clear and explicit testimony regarding her use of that money, we conclude that the trial court clearly erred when it made this finding of fact.[4] The trial court's opinion indicates that, absent this clearly erroneous factual finding, the court would have provided plaintiff with a larger spousal support award. Accordingly, we reverse the trial court's award of spousal support and remand the case to allow the court to structure an award using the facts in the record.

V. JUDICIAL BIAS

Lastly, plaintiff argues that the trial court exhibited bias against her and she is therefore entitled to a new trial. Plaintiff failed to challenge the trial court's conduct below, so her argument is unpreserved and plaintiff has not offered any unusual circumstances that would

---

[4] It is notable that this transfer of funds occurred a full year before plaintiff filed for divorce, which undercuts the trial court's conclusion that plaintiff made the transfer in an effort to "secret" the funds from defendant.

compel us to address her unpreserved claim. See *Meagher v Wayne State Univ*, 222 Mich App 700, 726; 565 NW2d 401 (1997) (explaining that a claim of judicial bias premised on the trial court's treatment of the parties during trial is not preserved if a party fails to object to the allegedly biased conduct); *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994) (explaining the general rule that, "absent unusual circumstances, issues not raised at trial may not be raised on appeal").

Nonetheless, even if we were to consider the substance of plaintiff's argument, we would find that it lacks merit. We presume that a trial judge is fair and impartial, and a party challenging this presumption bears the heavy burden of proving otherwise. *In re Susser Estate*, 254 Mich App 232, 237; 657 NW2d 147 (2002). "An actual showing of prejudice is required before a trial judge will be disqualified." *In re Forfeiture of $1,159,420*, 194 Mich App 134, 151; 486 NW2d 326 (1992). Plaintiff's allegations of judicial bias relate solely to the fact that the trial court interrupted her testimony on several occasions to ask her questions. During a bench trial, a court may ask questions "designed to clarify points or to expand upon the path of inquiry in order to assist the court in its role of factfinder." *In re Forfeiture of $53.00*, 178 Mich App 480, 497; 444 NW2d 182 (1989). A judge also has more discretion to question witnesses during a bench trial because, unlike a jury trial, "concern over the effect of the judge's comments and conduct d[oes] not exist." *In re Forfeiture of $1,159,420*, 194 Mich App at 153. Our review of the record in this case reveals that the trial court's interruptions and questions were merely designed to clarify plaintiff's testimony. Therefore, plaintiff's claim of judicial bias lacks merit.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Michael F. Gadola